**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JEFFREY SIMPSON, LISSETT CAMARGO, and MICHAEL TREPANIER, individually and on behalf all others similarly situated, | Case No.: |
| Plaintiff. | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| SOUTHERN NEW HAMPSHIRE UNIVERSITY D/B/A KENZIE ACADEMY, AND LAUNCH SERVICING, LLC, | |
| Defendants. | |

Plaintiffs Jeffrey Simpson, Lissett Camargo and Michael Trepanier ("Plaintiffs"), individually and on behalf of all other similarly situated bring this Class Action Complaint against Defendants, Southern New Hampshire University d/b/a Kenzie Academy and Launch Servicing, LLC, alleging as follows based upon information, belief, and investigation of counsel, except as to the allegations specifically pertaining to them, which are based on personal knowledge:

<u>NATURE OF THE CASE</u>

1.      Technology is evolving at a fast pace with not enough technological talent to fill the career void. It is estimated by the year 2030 "more than 85 million jobs might go unfilled, 'because there aren't enough skilled people to take them…'".[1] Post-secondary education is expensive and competitive, so schools competing for students must market affordable financing, attractive curriculum, and successful career placement.

---

[1] MIT Technology Review Insights, *New Approaches to the Tech Talent* Shortage, MIT Technology Review (September 21, 2023), *available at* https://www.technologyreview.com/2023/09/21/1079695/new-approaches-to-the-tech-talent shortage/#:~:text=By%202030%2C%20more%20than%2085,shortage%20in%20the%20short%20term (last visited Apr. 24, 2024).

1

2.      In recent years, non-profit institutions of higher education have been able to market lower costs by partnering with, or in many cases purchasing, for-profit "bootcamp" programs. A bootcamp program is a learning program bundled into short, intensive, rigorous curriculums designed to move a student through the program and into the work force as quickly as possible.

3.      The fact remains consumers choosing to enroll in a post-secondary education program are often burdened with the prospect of funding their education. In recent years, bootcamps and institutions of higher education began offering alternative forms of financing to lure students to their programs. One such form of alternative financing, called an "income share agreement" ("ISA"), has been marketed to students as an alternative to conventional student loans.

4.      A student opting to finance his or her education using an ISA will often pay a sum certain at the inception of the loan, and then agree that once the graduate's income exceeds a certain threshold, begin making payments based on income until either the payment cap is met or a period of years elapses. Often times, those offering ISAs as a form of financing operate as though the contracts are not credit or private education loans. In fact, many times the contracts state the funds are "NOT A LOAN." Operating in such a fashion is misleading to consumers and denys them of their ability to fully evaluate their financial options.

5.      The problem is ISA's used to finance expenses for post-secondary education are loans, subjecting them to the requirements of the 15 U.S.C. §1650(e) Truth in Lending Act ("TILA"); 12 C.F.R §§1026 Regulation Z ("Regulation Z") in addition to state lending laws and state consumer protection laws.

6.      A private education loan under Regulation Z is "extended to a consumer expressly, in whole or in part, for postsecondary educational expenses." 12 C.F.R. §1026.46(b)(5).

7.      A private education loan under TILA is "an extension of credit that … [i]s extended to a consumer expressly, in whole or in part, for postsecondary educational expenses, regardless of whether the loan is provided by the educational institution that the student attends" and are "not made, insured, or guaranteed under title IV of the Higher Education Act of 1965." 12 C.F.R. §1026.46(b)(5).

8.      Defendants offered ISAs as a form of financing to circumvent the requirements contained in TILA and Regulation Z, thus allowing them to pitch a more attractive financing product in order to increase enrollment and raise profits.

9.      In most cases of ISAs, the borrower repays more than the amount financed which amounts to a finance charge.

<u>PARTIES</u>

10.      Plaintiff Lissett Camargo ("Camargo") is an adult individual who at all relevant times has been a citizen and resident of the State of Ilinois.

11.      Plaintiff Michael Trepanier ("Trepanier") is an adult individual who at all relevant times has been a citizen and resident of the State of Indiana.

12.      Plaintiff Jeffery Simpson ("Simpson") is an adult individual who at all relevant times has been a citizen and resident of the State of Indiana.

13.      Defendant Southern New Hampshire University d/b/a Kenzie Academy ("SNHU") is the successor in interest to the previous for-profit corporation, Kenzie Academy, Inc. ("Kenzie Academy"). Kenzie Academy was incorporated in the State of Delaware with its principal place of business in Indianapolis, Indiana. Kenzie Academy was originally registered with the Indiana Secretary of State's office on or about June 30, 2017, but had its Certificate of Authority revoked on or about March 5, 2022.

14.     SNHU is a New Hampshire corporation with its principal place of business located at 2500 N. River Road, Manchester, NH 03106-1018. SNHU is licensed to do business in the State of Indiana.

15.     SNHU purchased Kenzie Academy, or at least most of its assets, on or about March 2021[2] and assumed operations over the Kenzie Academy and its Indianapolis campus.

16.     Defendant Launch Servicing, LLC ("Launch Servicing") is, and was, a foreign limited liability company, formed in Delaware and registered with the Indiana Secretary of State as of the filing of this complaint. Launch Servicing's principal place of business is in San Diego, California.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than the Defendants. *See* 28 U.S.C. §1332(d)(2)(A). The Court has personal jurisdiction over the Defendant SNHU because it owned and operated Kenzie Academy which was located and headquartered in Indiana. SNHU also conducts substantial business throughout Indiana. The Court has personal jurisdiction over Launch Servicing because it is responsible for servicing the loans of SNHU students who reside in Indiana.

18.     Venue lies in this district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district.

---

[2] Busta, Hallie, *Southern New Hampshire Buys Kenzie Academy to Grow Alternative Credentials*, Higher Ed Drive, (March 9, 2021), *available at* https://www.highereddive.com/news/southern-new-hampshire-buys-kenzie-academy-to-grow-alternative-credentials/596415/ (last visited April 24, 2024).

FACTUAL BACKGROUND

19.     Kenzie Academy was formed in 2017 as a for-profit tech start-up school. It was designed and developed as a tech "bootcamp" school designed to provide students an intense education in a short period of time for the lowest cost possible.

20.     In 2019, Kenzie Academy described itself as "an online and in-person college alternative that creates jobs for tomorrow's economy by providing technology training to anyone looking to accelerate their career…"[3]

21.     Kenzie Academy claimed its objective was to improve access to education for "millions of Americans who are barred from high quality education because of where they live and their financial situation" and to help them avoid "find[ing] themselves buried in debt and without a job."[4]

22.     Kenzie Academy's founder, Chok Ooi, explained in an undated interview with the Reagan Institute that adopting an educational funding model using ISAs would open the door to access to schools like Kenzie Academy:

> The ISA is a great access tool. Absent something like an income share, people from underserved communities or people who don't make enough – or don't have good credit scores – don't even have access to non-traditional, non Title IV Pell Grant programs like Kenzie.[5]

---

[3] Press Release, *Kenzie Academy*, *Kenzie Academy Secures $100 Million to Make Tech Education More Accessible to All Americans*, (Nov. 4, 2019) available at https://www.prnewswire.com/news-releases/kenzie-academy-secures-100-million-to-make-tech-education-more-accessible-to-all-americans-300949127.html#:~:text=%22This%20%24100%20million%20will%20level,tech%20for%20only%20%24100%20upfront (last visited Apr. 25, 2024).

[4] *Id*.

[5] Chok Ooi, Interview with Janet Tran, Reagan Institute, *available at* https://www.reaganfoundation.org/reagan-institute/publications/qa-with-chok-ooi-co-founder-ceo-of-kenzie-academy/ (last visited Apr. 25, 2024).

23.     Kenzie Academy shifted the focus of financial assistance offered through its for-profit model, to ISAs. Kenzie Academy secured a partnership with Community Investment Management which provided Kenzie Academy $100 million in debt to cover the operating costs associated with students who defer payment through the use of ISAs.[6]

24.     Kenzie Academy specifically used this $100 million commitment to ISAs to "recruit a more diverse population of students who may not be able to afford tuition or qualify for loans otherwise."[7] In other words, Kenzie Academy sought to enroll and profit from those who may be on the financial margins.

25.     This is not surprising, given that ISAs have long been a risky financial solution to paying for post-secondary education. Although ISAs have existed for decades, they have been repackaged and advertised as an "innovative solution to the student debt crises but are often drivers of consumer harm and fair lending risk."[8]

26.     In September 2021, the United States Consumer Financial Protection Bureau issued a consent order involving an identical scheme containing findings that ISA's were loans, did not contain the required Regulation Z disclosures, and violated TILA because the ISA's contained a prepayment penalty.[9]

---

[6] Cohen-Peckham, Eric, *Kenzie Academy is Scaling Up a Coding Program for 'The Heartland'*, (Nov. 8, 2019) *available at* https://techcrunch.com/2019/11/08/kenzie-academy-is-scaling-up-a-coding-program-for-the-heartland/ (last visited Apr. 25, 2024).
[7] *Id.*
[8] Mike Pierce and Tamara Cesaretti, *Income Share Agreements and TILA's Ban on Prepayment Penalties*, Student Borrower Prot. Ctr. (March 30, 2020) https://protectborrowers.org/wp-content/uploads/2021/03/ISA-Prepayment-Memo.pdf.
[9] United States of America Consumer Financial Protection Bureau, Case No. 2021-CFPB-0005, Filed Sept. 7, 2021. *Available at* https://files.consumerfinance.gov/f/documents/cfpb_better-future-forward-inc_consent-order_2021-09.pdf. (Last visited April 25, 2024)

27.     ISAs operate by requiring students to put money down, and, in exchange, the students agree that once their income exceeds a certain income threshold (in this case $40,000.00) the students will make payments based upon a percentage of their income until either: i) they meet a payment cap; or ii) a period of years elapses. If a student fell below the income threshold or did not have job placement, payments would be deferred, and the period of years would be extended.

28.     Kenzie Academy marketed itself to consumers by offering ISAs as a creative form of post-secondary educational financing. To appeal to a wider student base and make its financing more attractive, Kenzie Academy only required students to put down $100.00 to secure a seat in the program.

29.     Students would sign an Enrollment Agreement outlining terms of their educational program and its costs. Students were given a choice to either pay for their education up front with cash or finance their education using a Kenzie Academy ISA. Most students chose to finance their education using ISA's.

30.     As of November 2019, Kenzie Academy touted eighty-five percent (85%) of its students financed their education with ISAs.[10]

31.     To avoid regulatory compliance and consumer protection laws, Kenzie Academy presented ISAs to its students as though they were not loans or an extension of credit. In fact, Kenzie Academy's Income Share Agreement (Tuition ISA) specifically stated on its face **THIS IS NOT A LOAN OR CREDIT.**This information was, of course, false. A copy of the Income Share Agreements is attached hereto as Exhibit A.

---

[10] Cohen-Peckham, Eric, *Kenzie Academy is Scaling Up a Coding Program for 'The Heartland'*, (Nov. 8, 2019) *available at* https://techcrunch.com/2019/11/08/kenzie-academy-is-scaling-up-a-coding-program-for-the-heartland/ (last visited Apr. 25, 2024).

32.     In addition to deceiving students about the financing agreement they were signing, Kenzie Academy's ISAs also contained significant prepayment penalties. For example, students were told the cost of education was $23,000.00 and the maximum amount they would repay over the course of the ISA term would be $57,500.00 (or some other amount depending upon the cost of their education). If the student sought to pre-pay the cost of education amount, they were not permitted to do so under the terms of the ISA. Instead, the student was required to pay the full $57,500.00 any time the student decided to pre-pay the loan before the expiration of the loan term.

33.     The requirement that a student pay more than the amount financed operates as a finance charge.

34.     A student's monthly payment obligation is defined by a formula set forth in the ISA and is calculated using a percentage of the student's income, with the caveat that if the student's income is lower than the specified income threshold, the obligation for that month is zero. *See* Exhibit A.

35.     Using this model, Kenzie Academy attracted students to build its portfolio until it was purchased by SNHU in or about March 2021 for an undisclosed amount of money. As a condition of the acquisition, Kenzie Academy was to become a non-profit, operating as division of SNHU.[11] SNHU took on Kenzie Academy's assets, such as receivable's, which included ISAs.

36.     SNHU maintained Kenzie's curriculum model offering certificates in courses such as cybersecurity, full stack web development, python with applied blockchain, software engineering – backend development, and UX design, but shifted its focus almost entirely to online coursework.

---

[11] McKenzie, Lindsay, *Southern New Hampshire University Acquires Coding Bootcampe Kenzie Academy,* (March 9, 2021) *available at* https://www.insidehighered.com/quicktakes/2021/03/10/southern-new-hampshire-acquires-coding-boot-camp-kenzie-academy (last visited Apr. 25, 2025).

37.     SNHU's Kenzie Academy represented to its students that the ISAs were not loans and did not create debt. The representations contained in the ISA (Tuition ISA) are explicit and implicit, stating as follows:

a.   a notice in the participation disclosure that "an Income Share Agreement (ISA) is different from a loan" or that "ISAs are different from loans and tuition payment plans (which require repayment in full and may have a finance charge or interest)";

b.   a notice at the top of the Income Share Agreement that states "***THIS IS NOT A LOAN OR CREDIT***";

c.   a notice in the participation disclosure which states: "An ISA is not a loan or other credit instrument";

d.   a requirement you must be enrolled at Kenzie Academy to be eligible for the ISA;

e.   a notice under "Additional Terms" which states: "THIS INCOME SHARE AGREEMENT IS NOT A LOAN OR CREDIT";

f.   a notice under additional terms which states "This Agreement is not a loan or other credit instrument"

g.   references to fees being paid but no disclosure regarding what the fees actually are; and

h.   a statement that "[a]lthough this Agreement is not a loan or other credit instrument, we may inform credit bureaus about your positive payment behavior when you make payments as agreed. However, this also means that

late payments, missed payments or other defaults under this Agreement may

be reflected in your credit report."

*See* Exhibit A.

38.     SNHU's Kenzie Academy's ISA create the impression a student may prepay their ISA loan when, in reality, the student is not prepaying the cost of education. Instead, they are penalized by having to pay the entire Payment Cap contained in the ISA. Any prepayment is not a prepayment at all.

39.     SNHU's Kenzie Academy's prepayment penalty ensures that a student who chooses to enter into a high cost credit ISA could not refinance without significant cost, thus leaving the student with high cost credit in their economic lives for years.

40.     SNHU's Kenzie Academy intentionally misled students about the nature of the financial product they were purchasing and denied them all necessary information required to fully evaluate financial options prior to signing the ISAs.

41.     SNHU's Kenzie Academy partnered with Vemo Education, Inc ("Vemo") to encourage students to pay for tuition using ISAs.

42.     Vemo was a for-profit Delaware company that designed, implemented and managed ISA programs for its partners. Vemo provided ISA related services to a wide array of post-secondary educational institutions from universities to short-term, unaccredited vocational programs across the country.

43.     SNHU's Kenzie Academy and Vemo worked together to design and implement SNHU Kenzie Academy's ISA program. Vemo was responsible for drafting the ISA contracts utilized by SNHU's Kenzie Academy.

44.     Upon information and belief, after a student entered into an ISA contract, SNHU's Kenzie Academy paid a fee to Vemo in exchange for Vemo servicing the loan by collecting money from the student, assessing the amount of the payments owed by the student, and then paying a portion of those funds back to SNHU's Kenzie Academy.

45.     As of late winter/early spring 2023, Vemo was out of business. Vemo's status with the Delaware Secretary of State's Office was "Void, AR's or Tax Delinquent" as of March 1, 2023 and all of its websites were no longer in service.

46.     SNHU Kenzie Academy then partnered with Launch Servicing, LLC ("Launch Servicing") to service the ISA loans for its students.

47.     Launch Servicing is responsible for accepting payments, monitoring payments, annual assessments, collecting delinquent accounts and providing students information on status of their loans. Launch Servicing would also update credit bureaus.

48.     Students log in through an online portal to gain information about their loans. Periodically, Launch Servicing provides written updates to students about their loans and changes to the ISA program.

a.  Class Plaintiff Michael Trepanier

49.     Plaintiff Trepanier was accepted into the Kenzie Academy's Software Engineering Program ("Program"). The Program was to begin on January 28, 2020, and conclude on January 29, 2021.

50.     The Program was comprised of 1,920 hours of instruction over the course of 48 weeks. Plaintiff was to attend courses Monday through Friday, 9:00 a.m. to 3:00 p.m. with an additional ten (10) hours of training per week outside of classroom hours.

51.     Plaintiff Trepanier entered into an agreement with Kenzie Academy called "Kenzie Academy Enrollment Agreement" (Enrollment Agreement). A copy of the Enrollment Agreement is attached as Exhibit B.

52.     The Enrollment Agreement set forth the terms of enrollment.

53.     Under the Enrollment Agreement, Plaintiff Trepanier agreed to pay a "tuition fee" in the amount of twenty-four thousand dollars ($24,000.00). He was required to pay one-hundred dollars in order to secure a seat in the Program.

54.     The Enrollment Agreement required Plaintiff Trepanier to pay the remaining balance of $23,900 no later than January 28, 2020 either by:

   a.  Cash, check, or wire or bank transfer; or
   b.  Execution and delivery by Student of a Kenzie Income Share Agreement (ISA) of up to Twenty-Three Thousand Nine Hundred Dollars ($23,900.00) for any amount not paid by one of the methods outline in Section 2(i).

The Enrollment Agreement went on to specify that "[p]ayments under the ISA shall be required by and in accordance with the Kenzie Income Share Agreement."

55.     Plaintiff Trepanier was not in a position to pay his tuition fee by cash, check, or wire or bank transfer and, instead, chose to accept Kenzie Academy's offer of the ISA as a method of financing his education.

56.     Plaintiff Trepanier was handed a document called an Income Share Agreement. The essential terms of Plaintiff Trepanier's ISA loan were as follows:

12

## FINAL DISCLOSURE (FD)—INCOME SHARE AGREEMENT (TUITION ISA)

| PARTICIPANT: | ISA ORIGINATOR: | RIGHT TO CANCEL |
|---|---|---|
| Michael Trepanier 11509 Golden Willow court Zionsville, Indiana 46077 | Kenzie Academy 47 S. Meridian St. Indianapolis, IN 46204 | You have a right to cancel this transaction, without penalty, by midnight on February 3, 2020.  If you cancel by this date, you are canceling the contract in its entirety, including the disclosures.  You may cancel by writing us at Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677.  A mailed cancellation letter will be deemed timely if postmarked no later than the cancellation date listed above. |

| Your ISA Terms | | | Your ISA Payments End (Earliest to Occur): | | |
|---|---|---|---|---|---|
| ISA Amount | Income Share | Minimum Income Threshold | Payment Term  OR | Payment Cap  OR | Payment Window |
| **$23,900.00** | **13.00%** | **$3,333.34** | **48 payments** | **$41,825.00** | **96 months** |
| The cost of the services you will receive through this ISA | The percent of your gross monthly Earned Income you will pay | You are required to make Monthly Payments only when your gross monthly Earned Income is at least this amount | Payments end after you have made this many Monthly Payments (excluding any costs or fees, if applicable) | Payments end when you have paid this amount (excluding any costs or fees, if applicable) | Payments end this many months after your Grace Period ends (excluding any costs or fees, if applicable) |

57.     Plaintiff Trepanier signed the ISA on January 22, 2020, the day before he received the Enrollment Agreement.

58.     Plaintiff Trepanier later received a second updated term sheet from Kenzie Academy. Although the terms of Plaintiff Trepanier's second ISA term sheet did not vary from his original ISA, this was not the experience of all students who chose to finance their education with Kenzie's ISA. A copy of Trepanier's second updated term sheet is attached hereto as Exhibit C.

59.     Plaintiff Trepanier completed SNHU's Kenzie Academy January 20, 2021.

60.     Currently, Plaintiff Trepanier is paying $482.93 dollars each month towards his ISA.

     b.   Class Plaintiff Lissett Camargo

61.     Plaintiff Camargo enrolled in the Kenzie Academy User Experience Engineering Program ("UX" Program") on September 23, 2018. According to the Kenzie Academy Student Agreement ("Camargo Enrollment Agreement") the UX Program was to begin on January 15, 2019, with an anticipated completion date of January 15, 2021. A copy of Camargo's Enrollment Agreement is attached as Exhibit D.

62.     Plaintiff Camargo signed an Amended Kenzie Academy Student Agreement ("Amended Camargo Enrollment Agreement") on December 4, 2018, for the same UX Program and containing the same start and end dates.  The amended agreement decreased the amount of Plaintiff Camargo's down payment from one-thousand dollars ($1,000.00) to one-hundred dollars ($100.00). The down payment would secure Plaintiff Camargo's seat in the class. A copy of the Amended Camargo Enrollment Agreement is attached hereto as Exhibit E.

63.     According to the Amended Camargo Enrollment Agreement, the UX Program was comprised of 1,920 hours of instruction over the course of 48 weeks. Plaintiff was to attend courses Monday through Friday from 9:00 a.m. to 3:00 p.m. with an additional ten (10) hours of work per week outside of class hours.

64.     The Amended Camargo Enrollment Agreement set forth the terms of Plaintiff Camargo's enrollment at Kenzie Academy.

65.     Under the Amended Camargo Enrollment Agreement, Plaintiff Camargo agreed to pay a "tuition fee" in the amount of twenty-four thousand dollars ($24,000.00). After application of her down payment, Plaintiff Camargo owed Kenzie Academy twenty-three thousand nine hundred dollars ($23,900.00).

66.     According to the Amended Camargo Enrollment Agreement, Plaintiff Camargo was required to finance her education through a Kenzie Income Share Agreement provided by Kenzie Academy.

67.     Like Plaintiff Trepanier, Plaintiff Camargo was handed a document called an Income Share Agreement. The essential terms of Plaintiff Camargo's ISA loan were as follows:



**Income Share Agreement (ISA) Amended Final Disclosure**

**PARTICIPANT:**
Lissett Camargo
4441 S Marshfield Ave
CHICAGO, Illinois 60609

**INSTITUTION:**
Kenzie Academy
47 S. Meridian St
Indianapolis IN 46204

**Adjustment to Funding Amount and Terms**

In accordance with the Additional Terms of your Income Share Agreement, we are lowering the Funded Amount listed in this contract – and other terms, as applicable – to reflect the fact that your actual income share percentage and payment cap have decreased. Doing this benefits you by lowering your overall payment obligation. This Amended Final Disclosure is effective September 17, 2019 and supersedes the Final Disclosure sent on December 21, 2018.

| ISA Amount | Income Share | Payment Term | Payment Cap |
|---|---|---|---|
| $23,900.00 | 13% | 48 months | $41,825.00 |
| The market charge for the training services you will receive through this ISA, plus any funding charges. | The percent of your total earned income that you will share each month. | The maximum number of months during which you will share your income | The maximum amount you will pay over the payment term |

68.     Plaintiff Camargo signed the ISA on December 21, 2018 after signing the Amended Camargo Enrollment Agreement.

69.     Plaintiff Camargo remained enrolled at Kenzie Academy from January 15, 2019 to April 24, 2020. She successfully completed 100% of the first year of the UX Program. The second year of her program consisted of an optional cohort.

70.     Plaintiff Camargo was unenrolled from Kenzie Academy on February 12, 2021.

71.     As of May 1, 2024, Plaintiff Camargo had paid $11,530.35. She was paying between $595.83 and 655.41 most months.

72.     The ISA informs students that under certain circumstances, such as earning less than the Earned Income threshold, they may qualify for a deferment and defer payment on their ISA loan.

73.     Currently, Plaintiff Camargo is in deferment status on her ISA. Notwithstanding her deferment status, Plaintiff Camargo noticed automatic payments taken on May 23, 2024, and April 8, 2024 in the amounts of $75 each.

c.   Class Plaintiff Jeffrey Simpson

74.    Plaintiff Simpson  enrolled in the Software Engineering Program ("SE Program") at SNHU's Kenzie Academy on March 29, 2020. According to the Kenzie Academy Enrollment Agreement ("Simpson Enrollment Agreement") the SE Program was to begin on April 28, 2020, with an anticipated end date of April 30, 2021. A copy of Simpson's Enrollment Agreement is attached as Exhibit F.

75.    According to the Simpson Enrollment Agreement, the SE Program was comprised of one thousand nine-hundred and twenty (1,920) hours of instruction over the course of 48 weeks. Plaintiff was to attend courses Monday through Friday from 9:00 a.m. to 3:00 p.m. with an additional ten (10) hours of work per week outside of class hours.

76.    The Simpson Enrollment Agreement set forth Plaintiff Simpson's terms of enrollment with SNHU's Kenzie Academy. In order to secure his seat in the program, Plaintiff Simpson had to pay a one-hundred dollar ($100.00) down payment.

77.    Plaintiff Simpson paid the $100.00 down payment.

78.    Under the Simpson Enrollment Agreement, Plaintiff Simpson agreed to pay a "tuition fee" of twenty-four thousand dollars ($24,000.00). After application of his down payment, Plaintiff Simpson owed SNHU's Kenzie Academy twenty-three thousand nine hundred dollars ($23,900.00) to be paid by April 28, 2020 either by cash, check, credit card, or wire transfer; or by executing a Kenzie Income Share Agreement of up to $23,900.00.

79.    Plaintiff Simpson executed a document called Income Share Agreement on March 28, 2020. The essential terms of Plaintiff Simpson's ISA loan were as follows:

## FINAL DISCLOSURE (FD)—INCOME SHARE AGREEMENT (TUITION ISA)

| PARTICIPANT: | ISA ORIGINATOR: | RIGHT TO CANCEL |
|---|---|---|
| Jeffrey Simpson<br>14998 Lovely Dove Ln<br>Noblesville, Indiana<br>46060 | Kenzie Academy<br>47 S. Meridian St.<br>Indianapolis, IN<br>46204 | You have a right to cancel this transaction, without penalty, by midnight on April 7, 2020.  If you cancel by this date, you are canceling the contract in its entirety, including the disclosures.  You may cancel by writing us at Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677.  A mailed cancellation letter will be deemed timely if postmarked no later than the cancellation date listed above. |

| Your ISA Terms | | | Your ISA Payments End (Earliest to Occur): | | |
|---|---|---|---|---|---|
| **ISA Amount** | **Income Share** | **Minimum Income Threshold** | **Payment Term** _OR_ | **Payment Cap** _OR_ | **Payment Window** |
| $23,900.00 | 13.00% | $3,333.34 | 48 payments | $41,825.00 | 96 months |
| The cost of the services you will receive through this ISA | The percent of your gross monthly Earned Income you will pay | You are required to make Monthly Payments only when your gross monthly Earned Income is at least this amount | Payments end after you have made this many Monthly Payments (excluding any costs or fees, if applicable) | Payments end when you have paid this amount (excluding any costs or fees, if applicable) | Payments end this many months after your Grace Period ends (excluding any costs or fees, if applicable) |

80.     Plaintiff Simpson successfully completed his coursework at Kenzie Academy in April 2021 receiving two (2) certificates: Front-End and Full Stack. Plaintiff Simpson was able to obtain employment without the assistance of Kenzie Academy.

81.     As of May 1, 2024, Plaintiff Simpson had made thirty-two (32) payments towards his outstanding Payment Cap of forty-one thousand eight hundred twenty-five dollars ($41,825.00). Prior to May 1, 2024, Plaintiff Simpson was responsible for making monthly payments each month in the amount of $542.40. After May 1, 2024, Plaintiff's Simpson's monthly payment increased to $962.38 due to an increase in his annual salary

82.     On March 26, 2024, Plaintiff Simpson received email correspondence from Launch Services indicating the terms of the ISA were being modified by Launch Services and SNHU's Kenzie Academy to reflect "industry best practices."

83.     According to the email from Launch Services the modifications included:
- Payment Terms would be reduced to no more than 30 months if your payment term is more than that duration;
- Payment Cap would be reduced to the original amount funded. If more than that amount had been paid, students would receive a refund;
- There will no longer be a deferment term extension. Instead, each month you are in deferment will count toward your Payment Term.

17

For many account holders, this will result in a shorter repayment window.

84.     In addition to these modifications to the ISA program, the correspondence also informed students that Launch Servicing would stop reporting to credit bureaus and other consumer reporting agencies. Additionally, "SNHU also requested the credit reporting tradeline for all current Kenzie accounts be removed" but the "removal of the credit reporting tradeline does not apply to accounts that were completed, closed or satisfied before December 28, 2023".

<u>CLASS ALLEGATIONS</u>

Class Definition

85.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify a class of all SNHU students who financed their education using an ISA.

86.     The proposed Nationwide Class is defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, financed his or her education using an ISA through SNHU's Kenzie Academy.

87.     The proposed Indiana Sub Class is defined as:

> All persons in the State of Indiana who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, financed his or her education using an ISA through SNHU's Kenzie Academy and serviced by Launch Servicing, LLC.

88.     Excluded from the Class are the Defendants, their subsidiaries and affiliates, their officers, directors, and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

89.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class prior to moving for class certification.

90.     **Numerosity.** The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendants' records. Although the exact number of Class Members remains uncertain, Plaintiffs believe the class includes in excess of one-hundred (100) members.

91.     **Commonality.** This action involves questions of law and fact that are common to Class Members. Such common questions include, but are not limited to:

a.     Whether SNHU misled Plaintiffs and Class Members by representing ISAs were not a loan;

b.     Whether SNHU violated Regulation Z by failing to include proper financial disclosures on the fact of its ISAs;

c.     Whether the "payment cap" contained within SNHU's ISA constitutes a prepayment penalty on a private education loan in violation of TILA;

d.     Whether Defendants loan documents are void as a matter of law for violation of Ind. Code §24-4.5-5-202 and Ind. Code 24-4.5-3-502; and

e.     Whether Plaintiffs or Class Members are entitled to a refund for all payments made to Defendants pursuant to these illegal ISA loans.

92. **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs' claims and Class Member claims are based on the same legal theories and arise from the same failure of the Defendants to make proper financial disclosures. Plaintiffs and Class Members utilizing ISAs with SNHU relied upon the representations made by SNHU when selecting financing. SNHU made improper disclosures creating an incomplete financial picture of financing options available to SNHU's students.

93. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class Members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; Plaintiffs intend to prosecute the action vigorously; and Plaintiffs' counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiffs and their counsel.

94. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class Members. For example, Defendants failure to include proper lending disclosures applies to every class member who signed an ISA. Thus, Defendants liability and the fact of damages is common to Plaintiffs and each member of the Class. If Defendant failed to properly make financial disclosures, then Plaintiffs and each Class Member suffered damages by being locked into a high interest rate loan without the ability to refinance or pay off the loan early without penalty.

95. **Superiority.** Given the amount recoverable by each Class Member, the expenses of litigation are insufficient to support or justify individual suits, making this action superior to individual actions.

96.     **Manageability.** While the precise size of the Class is unknown without the disclosure of Defendants' records, online articles suggest that before Kenzie Academy was purchased by SNHU, it was seeking to grow its base due to a large investment that would allow Kenzie Academy to serve tens of thousands of students.[12] Similarly, SNHU's website touts that is serves 170,000 students through online enrollment, a subset of which would have been enrolled in its Kenzie Academy.[13] Plaintiffs' claims and those of the Class Members are substantially identical as explained above. Certifying the case as a class action will centralize these substantially identical claims in a single proceeding and adjudicating these substantially identical claims at one time is the most manageable litigation method available to Plaintiffs and the Class.

<u>FIRST CAUSE OF ACTION</u>
VIOLATION OF TRUTH IN LENDING ACT ("TILA")
15 U.S.C. §1650
(SNHU)

97.     Plaintiffs reincorporate and restate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

98.     TILA prohibits "private educational lenders" from "impos[ing] a fee or penalty on a borrower for early repayment or prepayment of any private education loan." 15 U.S.C. §1650 (e).

99.     The ISAs offered by the Defendant SNHU Kenzie Academy are "private education loans" under TILA because they are "an extension of credit that…[i]s extended to a consumer expressly, in whole or in part, for postsecondary educational expenses, regardless of whether the loan is provided by the educational institution that the student attends" and are "not made, insured,

---

[12] Cohen-Peckham, Eric, *Kenzie Academy Scaling up Coding Academy for 'The Heartland'*, Tech Crunch (Nov 8, 2019), https://techcrunch.com/2019/11/08/kenzie-academy-is-scaling-up-a-coding-program-for-the-heartland/ (last visited April 24, 2024).
[13] https://www.snhu.edu/about-us

or guaranteed under title IV of the Higher Education Act of 1965 (20 U.S.C. §1070 et. seq.)." 12 C.F.R. §1026.46(b)(5).

100.    Defendant SNHU Kenzie Academy is a "private educational lenders" under TILA because it is "engaged in the business of soliciting, making, or extending private education loans." 15 U.S.C. §1650(a)(7)(C).

101.    SNHU Kenzie Academy provided students with Income Share Agreement contracts.

102.    The Defendants defined the "ISA Amount" as the market charge for the training services the student will receive utilizing the ISA, plus any funding charges.

103.    The ISA Amount for Plaintiff Trepanier was $23,900.00.

104.    The ISA Amount for Plaintiff Camargo was $23,900.00.

105.    The ISA Amount for Plaintiff Simpson was $23,900.00.

106.    The ISA loan agreement also imposed a "Payment Cap" on a student borrower. The Payment Cap is the maximum amount a student will pay over the life of the loan.

107.    Students, however, are not permitted to prepay on their loan unless they pay the full amount of the listed "Payment Cap."

108.    The ISA loan agreement imposes a penalty upon a student borrower if the student tries to prepay the ISA amount before the expiration of the loan term: "[y]ou may extinguish your obligations under your ISA before the payment terms ends by paying a prepayment amount equal to $57,500, less payments made to date plus any outstanding fees."

109.    The ISA loan agreement specifically imposes a fee or penalty upon a borrower for early repayment or prepayment of a private education loan.

110.    Under 15 U.S.C. §1640, Plaintiffs and the other members of the Class are entitled to damages, including statutory damages from SNHU.

111.    Under 15 U.S.C. §1640, Plaintiffs and the other members of the Class are entitled to payment of attorneys' fees and costs from SNHU.

SECOND CAUSE OF ACTION
VIOLATION OF REGULATION Z
12 C.F.R. §§ 1026.18 and 12 C.F.R. §§1026.46-48
(SNHU)

112.    Plaintiffs reincorporate and restate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

113.    Regulation Z requires that creditors, including originators of private education loans, disclose certain information.

114.    The statutory language requires disclosures be made which specifically state the amount financed (using that term); the finance charge (using that term); and the annual percentage rate (using that term). 12 C.F.R. §1026.18(b); 12 C.F.R. §1029.18(d); 12 C.F.R. §1026.18(e).

115.    Under Regulation Z, these disclosures must be made "on or with…an application for a private education loan" and "[o]n or with any notice of approval [of a private education loan] provided to the consumer." 12 C.F.R. §1026.47(a)-(b).

116.    Creditors must include "[a] statement that if the consumer files for bankruptcy, the consumer may still be required to pay back the loan." 12 C.F.R. §1026.47(a)(3)(iv), (b)(3)(vi).

117.    The ISAs offered by SNHU to its students, including Plaintiffs, constituted credit under Regulation Z because they provided the right to defer payment of debt or to incur debt and defer its payment. 12 C.F.R. §1026.46(b)(5).

23

118.    SNHU's ISA offerings constitute private education loans because they were being offered to a consumer expressly for post-secondary educational purposes. 12 C.F.R. §1026.46(b)(5). In fact, SNHU's ISA is titled "Income Share Agreement (Tuition ISA)".

119.    SNHU is a creditor under Regulation Z because it regularly extends credit to consumers which is "subject to a finance charge or…payable by written agreement in more than four installments" and/or are the persons to whom the ISAs are initially payable on the face of the ISA. 12 C.F.R. §1026.2(a)(17).

120.    As a creditor, SNHU failed to comply with Regulation Z because it did not list the required disclosures in the specific terms required by statute. Specifically, SNHU failed to disclose the amount financed; the finance charge; and the annual percentage rate. 12 C.F.R. §1026.18(b); 12 C.F.R. §1029.18(d); 12 C.F.R. §1026.18(e).

121.    SNHU also failed to include in their application, solicitation disclosures, or approval disclosure "[a] statement that if the consumer files for bankruptcy, the consumer may still be required to pay back the loan." 12 C.F.R. §1026.47(a)(3)(iv), (b)(3)(vi).

<u>THIRD CAUSE OF ACTION</u>
VIOLATIONS OF INDIANA LENDING LAWS
AUTHORITY TO MAKE LOANS – IND. CODE §24-4.5-5-202
(SNHU and Launch Servicing, LLC)
(Indiana Subclass, Only)

122.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

123.    Ind. Code §24-4.5-3-502 governs who has the authority to offer consumer loans in the State of Indiana.

124.    A depository institution, subsidiary of a depository institution regulated by the federal banking agency, certain collection agencies, or credit unions are permitted to make consumer loans. SNHU does not fall within the requirements of Ind. Code §24-4.5-3-502.

125.    Since SNHU and Launch Servicing are not one of the listed entities found in Ind. Code §24-4.5-3-502 (1), (2), the only way they would be permitted to extend a consumer loan would be to become licensed in the State of Indiana. Neither defendant was registered at the time ISAs were signed.

126.    Since neither Defendant was appropriately registered, licensed, or certified to make or service consumer loans or private education loans in the State of Indiana, the "loan is void and the debtor is not obligated to pay either the principal or loan finance charge." Ind. Code §24-4.5-5-202(2).

127.    Because the loans are void due to Defendants' failure to appropriately register or become licensed or certified to service consumer loans or private education loans in the State of Indiana, neither the Class Plaintiffs nor members of the class are bound by the terms and conditions of these void loans.

128.    Class Plaintiffs have paid towards the balance of their loan and therefore "have a right to recover the payment from the person(s) violating this Article or from an assignee of that person's right who undertakes direct collection of payments or enforcement of rights arising from the debt." Ind. Code §24-4.5-5-202(2).

129.    Each member of the Class who is similarly situated is also entitled to the same form of relief.

130.    Class Plaintiffs individually and on behalf of all sub class formally demand from Defendants a refund of all amounts paid under this illegal loan scheme. Ind. Code §24-4.5-5-202(4).

131.     The sub class is entitled to recover a penalty against the Defendants the greater of either the amount of credit service or loan finance charges or ten (10) times the amount of the excess charge as permitted by Ind. Code §24-4.5-5-202(4).

132.     Class Plaintiffs individually, and on behalf of the Class, are also entitled to recover their attorneys' fees for the Defendants' violation of Ind. Code §24-4.5-3-502.

FOURTH CAUSE OF ACTION
FRAUD – IND. CODE §35-43-5-4
(SNHU)
(Indiana Class, Only)

133.     Plaintiff incorporates the foregoing as if fully set forth herein.

134.     SNHU committed criminal fraud by knowingly or intentionally making false or misleading statements within their ISAs that the financing available to students was not credit and was not a loan. Despite this, SNHU reported payment information on the ISAs to the credit reporting agencies.

135.     SNHU also created a false impression in Plaintiffs and Class Members with the intention to obtain property (U.S. currency), to which they were not otherwise entitled in violation of Ind. Code §35-43-5-4(a)(1).

136.     SNHU represented to Plaintiffs and Class Members they were not signing up for credit or taking on debt when SNHU knew this was not true.

137.     SNHU did so to bind students to a loan agreement causing them to pay far more than the cost of their loan. Students were not entitled to early payment or prepayment without a substantial penalty.

138.     SNHU committed criminal fraud by knowingly and intentionally making a false or misleading statement and/or creating a false impression in Plaintiffs and Class Members and/or causing to be presented a claim that either contained a false or misleading impression in Plaintiffs

and Class Members, with the intent that Vemo Education, Inc. and/or Launch Servicing obtain property to which they were not entitled. Ind. Code §35-43-5-4(a)(2).

139.    SNHU committed criminal fraud by engaging in a scheme or artifice to commit an offense described in Paragraphs 94-97 above. Ind. Code §35-43-5-4(a)(4).

140.    Plaintiffs and Class Members are entitled to treble damages, attorneys' fees, and costs under the Indiana Crime Victim's Relief Act. Ind. Code §34-24-3-1.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.    For compensatory, statutory, treble and/or punitive damages in amounts to be determined by the trier of fact;

d.    For an order of restitution, disgorgement, and all other forms of equitable monetary relief;

e.    An award of Plaintiffs' reasonable attorneys' fees, costs and expenses;

f.    Awarding pre- and post-judgment interest on any amounts awarded; and

g.    A finding that pursuant to Ind. Code §24-4.5-5-202(2) the ISAs are void due to Defendant's violation of Ind. Code §24-4.5-3-502 and therefore the Class Plaintiffs

and members of the Class are entitled to repayment of their principal loan and all finance charges;

      h.     Awarding such other and further relief as may be just and proper.

## **JURY DEMAND**

A jury trial is demanded on all claims so triable.


Dated: July 2, 2024                          Respectfully submitted:

                                        RILEYCATE, LLC

                                        */s/ Russell B. Cate*
                                        Russell B. Cate (#27056-29)
                                        William N. Riley (#14941-49)
                                        Joshua N. Taylor (#26618-29)
                                        Sundeep Singh (#36591-29)
                                        11 Municipal Drive, Suite 320
                                        Fishers, Indiana 46038
                                        Telephone: (317) 588-2866
                                        Facsimile: (317) 458-1785
                                        Email:  rcate@rileycate.com
                                                          wriley@rileycate.com
                                                          jtaylor@rileycate.com
                                                          ssingh@rileycate.com